# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MIERZEJEWSKI, Minors.

UNPUBLISHED
July 17, 2018

No. 340404
Dickinson Circuit Court
Family Division
LC No. 15-000508-NA

Before: HOEKSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

The Family Division of the Dickinson County Circuit Court issued an order terminating respondent-mother's parental rights to her children, TM and EM ("the boys"). The trial court found that termination was appropriate under MCL 712A.19b(3)(c) (no reasonable likelihood that conditions will be rectified within a reasonable time considering children's ages), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if children are returned to parent's home), and further determined that termination was in the best interests of the children. Respondent-mother appeals by right, arguing that the trial court's findings of statutory grounds for termination and that termination is in the boys' best interests were clearly erroneous. We affirm.

## I. FACTS

Respondent-mother (respondent) had three children: TM, EM, and the boys' half-sister, KL.[1] After the boys' father and respondent divorced, the boys were placed with respondent. Petitioner became involved when KL was born, following reports that within the months preceding the child's birth, respondent had tested positive for benzodiazepines, opiates, cannabinoid, buprenorphine, and oxycodone. When respondent was admitted to the hospital to deliver KL, respondent tested positive for oxycodone, amphetamines, opiates, and cannabinoid.

---

[1] Respondent's parental rights to KL were separately terminated in August 2016, and she did not appeal that order. The parental rights of the father of EM and TM's were voluntary terminated in October 2016, and he is not participating in this appeal. The parental rights of KL's legal father were also voluntarily terminated, and he is not a party to this appeal. The instant appeal concerns only respondent's parental rights to her sons, EM and TM.

In the hospital, KL had begun to exhibit severe withdrawal symptoms, and her meconium screen was positive for opiates and cannabinoid. Respondent admitted to using marijuana and taking pills, including oxycodone and Suboxone (without a valid prescription), during the last two weeks of her pregnancy.

Shortly after KL was born, respondent called the police because people were on her roof in the early hours of the morning. The responding officers found no one on her roof or around her home and reported that respondent appeared to be high or hallucinating. The officers further noted that respondent's home was very cluttered and disorganized, such that it presented a hazard to the safety of her children. Later that day, petitioner made an unannounced visit to respondent's home. Respondent had scratches on her neck that she could not explain and refused to submit to another drug screen. At the time, respondent was awaiting sentencing for an incident in June 2015 in which she drove while her license was suspended. A petition was filed requesting that the trial court take jurisdiction over all of respondent's children. The children were taken into protective custody, and the boys were placed with their father, who lived with the boys' paternal grandmother. Respondent's housing was paid for by an agency program that covered rent and utilities.

In September 2015, respondent admitted the allegations in the petition, and the trial court exercised jurisdiction over the children. The night before the dispositional hearing, respondent used heroin and refused to submit to a drug screen before coming to court. The trial court stated that respondent was engaging in continual relapses and suspected that she might also have a mental health disorder that interfered with her ability to address her substance abuse. Within two months, respondent obtained a medical marijuana card and was prescribed Suboxone.

Before the first dispositional review hearing, respondent sporadically participated in visitation due to multiple periods of incarceration. At the hearing, the trial court stated that respondent had "failed to comply in any significant or meaningful way with the case service plan," that she had not benefitted from visitation, and that her visits were so unpredictable that they were actually serving as detriments to her children. Even so, the trial court indicated that it would give her "the benefit of the doubt" that she wanted "to maintain sobriety." The trial court did not order a termination petition to be filed.

In the time between the first and second dispositional review hearings, respondent began inpatient treatment, but was expelled for using controlled substances including marijuana, Adderall, heroin, alcohol, and an unidentified fifth substance. Respondent had since been incarcerated again. In May 2016, the trial court issued an order suspending respondent's parenting time, reasoning that respondent posed "a significant risk of harm to her children's physical wellbeing" due to her behavior while under the influence of controlled intoxicants.

During a third dispositional review hearing, the boys' grandmother testified that contact with their mother led to behavioral issues and disciplinary problems at school. The trial court found that respondent had not complied with any significant aspect of the case service plan because of her substance abuse and dependency, notwithstanding respondent's testimony that she was making some strides in complying with the case service plan. Before the fourth dispositional review hearing, respondent traveled to Detroit, Michigan, for a period of 18 days and had no contact with her children for the duration of her time away. She did not participate in

services during this period. Respondent stated that she had been sober and tested negative for controlled substances for 101 days at the time of the fourth dispositional review hearing. Nevertheless, the trial court found that respondent had not substantially complied with the case service plan or the trial court's orders. The trial court noted that the likelihood of harm to EM and TM if they were placed with respondent was "abundantly evident," as respondent sporadically left the area before reentering their lives without warning and struggled to take care of her own needs, let alone the needs of her sons.

In October 2016, the boys' father executed a release of his parental rights. He moved out of the residence he shared with the boys' grandmother, and the boys were allowed to remain with her. A fifth dispositional review hearing took place that month. Respondent had obtained employment, but she failed to take the boys to counseling as she was ordered to do and tested positive for amphetamines. Respondent also admitted that she used marijuana twice since the last hearing but added that she was attending Narcotics Anonymous (NA) meetings and educational classes. The trial court found that she was progressing, though it characterized respondent's struggle against addiction as "the most severe poly-substance issue that [the trial court had] witnessed personally in twelve years."

Before the sixth dispositional review hearing, respondent began to test positive for drugs that she was not prescribed, such as morphine and oxymorphone. Respondent stopped taking her prescribed Suboxone for a time although she indicated that she had since resumed her prescribed regiment. She had also stopped participating in counseling, group therapy, NA meetings, Alcoholics Anonymous (AA) meetings, and meetings with her recovery coach. Moreover, one of respondent's visits with her children became "quite chaotic" because respondent became overwhelmed and unable to handle the boys. The trial court found that the boys had been outside respondent's care for 17 out of the most recent 22 months, that respondent was still inappropriately using controlled substances, and that she had not made reunification with EM and TM a priority. The trial court found that reasonable efforts had been made to reunify the boys with respondent. The court authorized the filing of a petition to terminate respondent's parental rights but ordered that services be continued.

In January 2017, a petition was filed requesting the termination of respondent's parental rights to EM and TM. By February, however, respondent began to make real progress in complying with the case service plan. On the basis of her efforts, the boys' ages, and their "current situation," petitioner requested that the petition be withdrawn to give respondent more time to comply. The trial court granted petitioner's request.

Before the eighth dispositional review hearing, respondent tested positive for cocaine, though the lawyer-guardian ad litem suggested the lapse might have been the result of a disagreement between respondent and another woman. The trial court noted respondent's substantial compliance with the case service plan, but added that until a longer record of sobriety was established, the risk of harm that might result if the boys were returned to respondent's care remained. Before the ninth and final dispositional review hearing in June 2017, respondent consumed alcohol in a social context with a meal. But respondent had also procured employment and continued to cooperate with and benefit from the case service plan. She was largely compliant with her caseworkers and submitted to drug tests on demand. Although she failed to submit to one drug test, she explained that it conflicted with her employment.

Thereafter, respondent's progress took a turn for the worse. A Family Reunification staffer reported that respondent passed out or fell asleep three times in less than one hour during a face-to-face visit in her home, necessitating an early end to the visit. Respondent also began to communicate less frequently with the foster care worker and the trial court's chief juvenile officer. Between May and August 2017, respondent had been observed under the influence of controlled substances and failed several drug screens. Specifically, she tested positive for benzodiazepines, methamphetamines, cocaine, and THC. In late June 2017, the trial court's chief juvenile officer went to respondent's house to pick her up for a meeting. Upon entering the house, the officer could smell marijuana and noticed a marijuana "joint" sitting atop respondent's television stand. Although respondent had a medical marijuana card, the officer had advised her not to leave drugs openly around her residence in the past. Respondent was taken to the meeting; she became agitated, paced back and forth, displayed droopy eyes and slurred speech, had difficulty remaining balanced, and had a facial twitch that the officer had not previously noticed. The next day, the officer attempted to call respondent so that she could submit to a medication count. Attempts to contact respondent by phone or personal visit were unsuccessful until the following day. When asked to report to the chief juvenile officer's office with her medications, respondent initially refused, shouting obscenities. When respondent ultimately did report to the chief juvenile officer that day, she had more Suboxone than she was authorized to have according to her prescription.

In mid-July 2017, respondent lost her job. The foster care worker conducted a team meeting with respondent to create another plan. Respondent made no progress. Respondent testified that she eventually did secure two new jobs but they were never verified. Respondent stopped taking Suboxone entirely and admitted to again using cocaine and Adderall. The chief juvenile officer requested another drug screen, and respondent displayed agitated, hyperactive behavior such that she needed to complete the test at the local jail. Respondent tested positive for amphetamines, methamphetamines, marijuana, and Suboxone. Respondent asked a deputy at the jail to use water to dilute the results.

Late in July 2017, respondent's visitation rights were suspended. Before then, respondent attended all visitations possible. She also participated in school activities, medical appointments, and dental appointments. After her visitation rights were suspended, respondent largely did not respond to attempts to set up random drug screens.

In August 2017, petitioner learned that respondent was meeting with her recovery coach less frequently and had stopped attending NA or AA meetings. Respondent explained that she had not attended NA meetings because of her work schedule and because she was attempting to keep contact with her recovery coach. Later in August, petitioner filed a second petition to terminate respondent's parental rights to EM and TM, claiming that her parental rights should be terminated pursuant to MCL 712A.19b(3)(c), (g), and (j), and that termination was in the boys' best interests.

During the weekend immediately preceding the termination hearing, respondent was arrested for driving with a suspended license. At the hearing, respondent explained that she had a passenger in the car with her at the time that had some form of narcotic in her possession (respondent believed it to be heroin). When the arresting officer asked the occupants of the vehicle to get out of the car, a meth pipe fell out of the vehicle and broke on the concrete.

-4-

Respondent stated that she did not know that the pipe was in the car and that she was not traveling with the passenger for the purpose of purchasing heroin.

At the termination hearing, the boys' grandmother testified that she believed it was best for the boys to be placed with "a good family." She indicated her willingness to care for the boys until that occurred, but expressly stated that she was unable to keep up with them any longer and that her age was beginning to impede her ability to act in their best interests.

The trial court held that termination was appropriate under MCL 712A.19b(3)(c), (g), and (j) and further held that termination was in the boys' best interests.

## II. STANDARD OF REVIEW

This Court reviews for clear error the trial court's factual findings and ultimate determinations that the statutory grounds for termination of parental rights have been proven by clear and convincing evidence. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); MCR 3.977(K). We also review the trial court's determination regarding a child's best interests for clear error. *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). Likewise, we review for clear error the trial court's factual findings regarding the reasonable efforts made toward reunification of the family. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). A finding is clearly erroneous if, after reviewing the entire record, the reviewing court is definitely and firmly convinced that the trial court made a mistake. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). That is, the reviewing court must find the trial court's decision "more than just maybe or probably wrong." *Trejo*, 462 Mich at 356 (citation and quotation marks omitted).

## III. ANALYSIS

Respondent first argues that the trial court clearly erred when it found that termination was appropriate under MCL 712A.19b(3)(c), (g), and (j). We disagree.

A court may terminate the parental rights of a respondent if the court finds by clear and convincing evidence one or more of the statutory factors listed in MCL 712A.19b(3). MCL 712A.19b(3); MCR 3.977(E)(3). The trial court must also find that termination of parental rights is in the child's best interests. MCL 712A.19b(5); MCR 3.977(E)(4). A court is required to state its findings and conclusions regarding the statutory factors on the record or in writing. *Trejo*, 462 Mich at 355; MCL 712A.19b(1). "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The first factor relied on by the trial court, MCL 712A.19b(3)(c), provides that termination is appropriate if

> [t]he parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The initial dispositional order concerning the boys was issued in October 2015. By the time of the termination hearing in September 2017, more than 182 days had passed. Moreover, in just the last months of these proceedings, respondent fell unconscious three times in less than one hour during a face-to-face visit in her home; began failing to communicate with her foster care worker and the trial court's chief juvenile officer; was observed under the influence of controlled substances, began testing positive for controlled substances, including benzodiazepines, amphetamines, methamphetamines, cocaine, and THC, openly displayed her use of controlled substances in her home; displayed droopy eyes, difficulty remaining balanced, slurred speech, agitated behavior, and a twitch in her jaw during a meeting with the chief juvenile officer; shouted obscenities at the officer when asked to submit to a medication count, which ultimately indicated that she was not taking her medication as prescribed; lost her employment; failed to report progress following a team meeting aimed at getting her back on track; began using Adderall without a prescription; asked a deputy to dilute the results of a failed drug test; began ignoring requests for drug screens; stopped meeting with her recovery coach or attending AA or NA meetings; and was arrested for driving with a suspended license while carrying a passenger who was in possession of drugs and drug paraphernalia. Whatever progress respondent made since these proceedings began in the summer of 2015 clearly had dissipated in a short period just before the termination hearing.

Respondent contends that there was no evidence that she would not overcome her addiction if given more time. However, termination is appropriate under MCL 712A.19b(3)(c) if there is no *reasonable likelihood* that the conditions leading to adjudication or causing the children to come within the jurisdiction of the trial court will be rectified within a reasonable time considering the children's ages. The evidence outlined above suggests that there was no reasonable likelihood that the undesirable conditions leading to adjudication and causing EM and TM to come within the trial court's jurisdiction would be rectified within a reasonable time, if ever. Respondent was given more than two years to address her substance abuse issues and repeatedly demonstrated that she could not defeat old habits. As the trial court noted, EM and TM needed permanency, stability, and finality, and they should not have to wait any longer.

Respondent also contends that the trial court failed to recognize the sufficient progress she had made in complying with and benefitting from the case service plan. To the contrary, the trial court did recognize the progress respondent made throughout these proceedings, repeatedly granting her more time to comply with the case service plan and applicable orders until more than two years had passed. At the termination hearing, the trial court expressly referenced

respondent's accomplishments, including her completion of two inpatient treatment programs, periods of sobriety, periods of employment, and bond with her children. The trial court further acknowledged that respondent's positive endeavors persuaded petitioner to withdraw its first petition requesting termination of her parental rights over the boys. The fact remains, however, that respondent severely regressed in the last months of these proceedings.

Accordingly, we conclude the trial court did not clearly err by finding that termination was appropriately ordered under MCL 712A.19b(3)(c). Because only one statutory factor need be established by clear and convincing evidence to properly terminate parental rights under MCL 712A.19b(3), it is unnecessary to consider respondent's arguments regarding termination under MCL 712A.19b(3)(g) and (j). *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Respondent next advances the unpreserved argument that she was not given a meaningful opportunity to participate in the case service plan.[2] We disagree.

Respondent attributes her purported lack of opportunity to the periods in which she was incarcerated and when she voluntarily left the area during pendency of the action. "[A] court may not terminate parental rights on the basis of 'circumstances and missing information directly attributable to respondent's lack of meaningful prior participation.' " *Mason*, 486 Mich at 159-160 (citation omitted). It is true that respondent was incarcerated several times between the filing of the initial petition and the second dispositional review hearing; however, respondent was consistently contacted by her assigned caseworkers and given access to a wide variety of services. Her progress in complying with the case service plan was closely tracked throughout these proceedings. Accordingly, the decision to terminate respondent's parental rights was not the result of missing information stemming from respondent's lack of meaningful opportunity to comply with the case service plan. See *Mason*, 486 Mich at 159-160. Rather, the trial court had a great deal of information concerning respondent's compliance with the services made available to her, notwithstanding her periods of incarceration. See *id*.

Respondent lastly contends that the trial court's findings regarding the boys' best interests were clearly erroneous. Again, we disagree.

---

[2] A parent must raise an issue before the trial court for it to be preserved for appellate review. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Respondent has never previously argued that she was not given a meaningful opportunity to participate in the fulfilment of the case service plan. The issue is therefore unpreserved. See *id*. Regardless, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented . . . ." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). A trial court must afford a respondent in termination proceedings a meaningful opportunity to comply with the case service plan. *Mason*, 486 Mich at 169. Accordingly, we consider the issue regardless of respondent's failure to preserve it. See *Smith*, 269 Mich App at 427.

Once a trial court has determined that termination is appropriate under one or more of the statutory grounds under MCL 712A.19b(3), the trial court must also determine whether termination of parental rights is in the child's best interests. MCL 712A.19b(5); MCR 3.977(E)(4). In deciding whether termination is in the child's best interests, the trial court is permitted to consider evidence within the entire record. *Trejo*, 462 Mich at 356. The trial court should weigh all the evidence available to determine the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

Respondent contends that the trial court improperly weighed the children's placement with their grandmother in favor of termination. "[A] child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)[3] . . . ." *Mason*, 486 Mich at 164. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). In this case, the trial court acknowledged the boys' relative placement. At the termination hearing, the boys' grandmother testified that she believed it would be best for the boys to be adopted by another family because she was beginning to struggle in keeping up with EM and TM as they grew, which hindered her ability to act in their best interests. Under the circumstances, where a relative with whom the children are placed articulates that she cannot provide an appropriate permanent home, continued placement with that relative cannot be in the children's best interests. There is no evidence in the record that there are other suitable relatives with whom EM and TM could find a permanent home. Accordingly, the trial court did not clearly err in weighing this factor in favor of termination.

Respondent next asserts that the trial court did not give the bond she shared with her children adequate weight. The strength of a familial bond is only one factor among many that the trial court may consider in analyzing the best interests of the child. *White*, 303 Mich App at 713-714. Other factors that justify termination might outweigh considerations given to the bond between a parent and his or her child. *Id*. Here, the trial court acknowledged the bond between respondent and her children. Even so, the trial court found that respondent had not demonstrated the ability to provide care and guidance to the boys. The trial court specifically referred to respondent's failure to allow her children to receive a trauma assessment in August 2017, and the effect that years of substance abuse and mental illness have had on her ability to parent. The trial court additionally found that after more than two years of proceedings, termination was the best course of action to facilitate the boys' need for permanency, stability, and finality. Respondent does not dispute the accuracy of these findings; she disputes only the weight they were given. In light of the many factors weighing in favor of termination, respondent cannot prevail solely on the basis of the bond she shared with her children. See *id*.

Respondent next argues that there was no evidence presented that she was incapable of providing her children with adequate food, clothing, or medical care. As the trial court noted, respondent had lost a job in July 2017, very soon after procuring this employment. Respondent

---

[3] Now MCL 712A.19a(8)(a).

did state that she had secured new employment shortly thereafter. However, especially when viewed in the context of her consistent substance abuse, it was not clear that respondent had the ability to provide for her children.

Finally, respondent contends that the trial court failed to consider the reasonable preferences of the boys. A trial court may consider the preferences of the children when analyzing their best interests in the context of termination proceedings, but it is not required to adhere to those preferences. *In re Powers Minors*, 244 Mich App 111, 120; 624 NW2d 472 (2000). In this case, neither EM nor TM ever articulated his preference to the trial court, so there were no articulated preferences for the trial court to consider. Under these facts and because there was no requirement to consider any preference, there is no basis for reversal.

We affirm.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Jane E. Markey